* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rowell, and the briefs and oral arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence in this matter. Having reconsidered the evidence of record, the Full Commission hereby reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 * * * * * * * * * * * *Page 2 
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and that the Industrial Commission has jurisdiction of the parties and of the subject matter;
2. All parties are subject to and bound by the North Carolina Workers' Compensation Act;
3. All parties have been properly designated and there is no question as to misjoinder or nonjoinder of parties;
4. The Third Party Administrator on the risk for the Defendant in this claim was Cambridge Integrated Services Group;
5. The Plaintiff alleges to have sustained a compensable injury to her hands and shoulders in the form of an occupational disease as the result of repetitive motion and use peculiar to her employment on or about May 16, 2005;
6. The Defendants have denied this case and contend that Plaintiff did not sustain any compensable injury by accident to the shoulders or hands; that Plaintiff did not develop any compensable occupational disease of the shoulders or hands; and that Plaintiff's alleged symptoms and her alleged disability, if any, are not related to her employment with the Employer;
7. An employment relationship existed between the employee and employer on May 16, 2005;
8. The Plaintiff's employment with Employer-Defendant was terminated on or about May 16, 2006; *Page 3 
9. The employee's average weekly wage is $402.40;
10. A mediation was held and impassed on November 30, 2006;
11. The Parties Stipulated into evidence as Stipulated Exhibit #1, Pre-Trial agreement, as modified and initialed by the parties;
12. The Parties Stipulated into evidence as Stipulated Exhibit #2, medical records;
13. The Parties Stipulated into evidence as Stipulated Exhibit #3, I.C. Forms;
14. The Parties Stipulated into evidence as Stipulated Exhibit #4, discovery documentation; and
15. The Parties Stipulated into evidence as Stipulated Exhibit #5, personnel records.
 * * * * * * * * * * *
Based upon all the competent evidence of record, and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was 49 years old at the time of the hearing before the Deputy Commissioner. She is right hand dominant, and was educated through the twelfth grade.
2. Defendant-employer produces bags of various sizes for various products such as cat litter, cat food and dog food.
3. Plaintiff was hired by Defendant-employer on December 7, 2004, as a labor pool worker. Prior to such employment, Plaintiff's medical history was positive for bilateral shoulder and neck pain along with diffuse tenderness to palpitation in all bones and muscles of the bilateral upper extremities dating back to January of 1999. *Page 4 
4. For the first month of her employment, Plaintiff was in training during which time she was introduced to the various production machines, was shown how to work each machine by the full duty employees and provided assistance to such employees.
5. In January 2005, after completing training, Plaintiff began regular duty employment during which she was assigned on an as needed basis primarily to one of three machines: the webber, the pinch bottomer, and the tuber stacker.
6. Plaintiff's general job duties on each machine included grouping a stack of 25-50 bags together (commonly referred to as a "hand"), removing the hand from the conveyor belt, flipping and inspecting the bags of the hand for defects, and turning and stacking the hand on a pallet.
7. During her employment, the machines to which Plaintiff was assigned typically produced hands weighing less than ten pounds. The pallets on which these hands were stacked sat at floor level, with the exception of the webber's pallet which sat at waist level. Additionally, the height of the stack would vary from day to day and week to week depending on the work order with some rising to head level or above.
8. At the hearing before the Deputy Commissioner, a job video was viewed showing employees performing the production line tasks performed by Plaintiff. Mr. Tony Gathings, Defendant-employer's Quality Manager and a former Supervisor, testified that the video accurately portrayed the speed at which the job was performed. However, Plaintiff testified that the job video inaccurately portrayed the speed as it was too slow. Plaintiff's witnesses and co-workers, Wanda McNair and Tony Brodie also testified that the video was too slow. The Full Commission gives greater weight to plaintiff and Ms. McNair and Ms. Brodie, who all worked on the production line. Plaintiff specifically testified that the Defendant-employer ran the *Page 5 
machines faster because the goal was to get as many bags out per hour as possible. Thus, the Full Commission finds that though the job presented and viewed at the hearing before the Deputy Commissioner is a sufficiently accurate portrayal of Plaintiff's job duties with Defendant-employer, the video did not accurately reflect the speed at which plaintiff performed her duties.
9. Following Plaintiff's training period, she was mostly assigned to the pinch bottomer and stacker jobs. She testified that the jobs were difficult and both hurt her shoulders because the bags were heavy and she was constantly doing the same movement throughout the day. She rarely worked in the webber department, with smaller bags, following her training period.
10. Plaintiff testified that shortly after she began working for Defendant-employer, her shoulders, arms, elbows and hands began hurting her. It became hard for Plaintiff to lift above her shoulders because of the pain, and she could not lift her hands over her head.
11. On January 26, 2005, Plaintiff sought treatment with Steve Collins, a physician assistant at Sandhills Internal Medicine where she was diagnosed with tendonitis. Plaintiff returned to Mr. Collins on May 5, 2005, when her tendonitis had not improved. Mr. Collins assessed joint pain and referred Plaintiff to Pinehurst Rheumatology for an evaluation.
12. On May 16, 2005, Plaintiff presented to Dr. H. Vann Austin of Pinehurst Rheumatology. Plaintiff's complaints on that date included pain in the hands, fingers, wrists, shoulders, and lateral ankles with spasms in the hand and calves. Plaintiff's dominant pain was in her shoulders. Dr. Austin ruled out arthritis, and attempted to treat Plaintiff with an injection of Xylocaine, which was not successful. Dr. Austin assigned Plaintiff with restrictions of no lifting of more than five pounds and no putting her hands above her heads. *Page 6 
13. Defendant-employer could not accommodate the restrictions assigned by Dr. Austin, so Plaintiff last worked for Defendant-employer on May 16, 2005. Since last working for Defendant-employer, Plaintiff received 25 weeks of short term disability payments at $164.29 per week, totaling $4,107.25 through a plan fully funded by Defendant-employer. Plaintiff's short-term disability application, as completed by Dr. Austin, lists "diffuse mayalgias" that were "mainly due to work activities." Additionally, Plaintiff received 18 weeks of unemployment benefits at $175.00 per week, totaling $3,150.00.
14. Dr. Austin ultimately referred Plaintiff to Dr. Mark Brenner at Pinehurst Surgical Clinic for an orthopedic consult. On June 15, 2005, Plaintiff presented to Dr. Brenner of with a several month history of bilateral shoulder pain and discomfort. Based upon physical examination and a review of bilateral shoulder MRI films, Dr. Brenner diagnosed Plaintiff with bilateral subacromial bursitis; a condition which Dr. Brenner considers to be interchangeable with rotator-cuff tendonitis and impingement syndrome.
15. On September 28, 2005, Dr. Brenner performed left shoulder arthroscopic subacromial decompression during which he discovered and removed bursa adhesions/scar tissue in addition to debriding Plaintiff's frayed rotator cuff and AC joint spur.
16. On October 23, 2006, Plaintiff began seeing Dr. Douglas Burch, a chiropractor with Burch Chiropractic Center, to treat her severe pain. Dr. Burch treated Plaintiff for neck pain with radiating pain in both of her shoulders. He also treated Plaintiff for low back pain and pain radiating into the left leg, which was unrelated to plaintiff's work-related shoulder condition. Dr. Burch performed a series of chiropractic adjustments on Plaintiff, and she responded well to his treatment from October 2006 through December 2006. *Page 7 
17. Dr. Burch testified that he is experienced in treating individuals with bursitis or impingement syndromes, life Plaintiff, and finds that the adjustments that he provided to Plaintiff's neck had a beneficial effect upon the way that the shoulders feel. He further stated that the release of stress on the paraspinal muscle can improve bursitis symptoms where there in no torn rotator cuff.
18. On December 13, 2005, Dr. Brenner released Plaintiff for work with permanent restrictions of no lifting over five pounds with either arm and avoidance of repetitive lifting and overhead activity.
19. On November 2, 2006, Plaintiff obtained a job with another employer, Teledyne Allvac, within her restrictions and at wages greater than or equal to those earned with Defendant-employer prior to the alleged occupational disease at issue herein.
20. Medical expert testimony in this matter was provided by Mark E. Brenner, M.D. and Douglas Burch, D.C. Dr. Brenner was admitted as an expert in orthopedic surgery with a specialty in the hand, elbow and shoulder, while Dr. Burch was admitted as an expert in Chiropractic care. Dr. Brenner and Dr. Burch both testified definitively that the activity that Plaintiff performed as a part of her job put intermittent pressure on the AC joint structures and the bursa in her shoulders.
21. Dr. Brenner testified that absent acute injury and rheumatoid arthritis, intermittent pressure would have to be given high consideration as a causative factor for the pain that Plaintiff was suffering after doing her job with Defendant-employer. He testified that intermittent pressure is in the "more-likely-than-not" category for the cause of her pain after eliminating the other potential causes. Having eliminated the other potential causes, Dr. Brenner was of the opinion that the cause of Plaintiff's bursitis is intermittent pressure. Dr. Brenner's *Page 8 
testimony, when read in its entirety, establishes that intermittent pressure on the bursa because of Plaintiff's work-related activities is more probably than not the cause of Plaintiff's bursitis or, at a minimum, something that aggravated the shoulders to cause the bursitis to become symptomatic.
22. Dr. Brenner further testified that his opinion on causation would be even more probable if the job activities that Plaintiff performed were faster than that shown on Defendant's job video. As the Full Commission as found herein, the credible evidence of record establishes that Plaintiff did indeed perform her job at a speed faster than her job is portrayed on Defendant's job video.
23. Dr. Burch, Plaintiff's chiropractor, testified that based upon Plaintiff's history and her clinical and x-ray findings, plaintiff's work-related shoulder conditions, including bursitis and impingement syndrome, had produced radiation of pain, alteration of use, muscle spasm, and point tenderness in the neck and upper back muscles. Dr. Burch stated that these conditions were causally related to plaintiff's occupation, and that the thoracic and cervical problems that Plaintiff experienced were secondary to the primary work-related shoulder condition. In reviewing the job video provided by Defendants, Dr. Burch testified that the biomechanical load placed on the thoracic and cervical spine were highly stressful to the shoulder girdle, as well as the thoracic and cervical spine. Further, Dr. Burch testified that the activity depicted would be the type of activity that would increase intermittent pressure upon the bursa area of the shoulders, even without regard to speed.
24. Plaintiff does not dispute that she had neck and shoulder complaint prior to working for the Defendant-employer, for which she had been treated in prior years. However, Plaintiff had never been diagnosed with bursitis and her prior shoulder and neck problems were *Page 9 
of a different kind and quality than they were following her employment with Defendant-employer. The greater weight of the evidence establishes that the work with Defendant-employer at a minimum aggravated Plaintiff's shoulders and resulted in disability. Dr. Brenner testified that intermittent pressure, as seen in plaintiff's job, can aggravate a pre-existing condition that is asymptomatic.
25. Based on the totality of the evidence of record, including the expert opinions of Dr. Brenner and Dr. Burch, the Full Commission finds that Plaintiff's employment with Defendant-Employer exposed her to a greater risk of developing the occupational disease of bilateral shoulder bursitis or shoulder impingement due to intermittent pressure in the employment as compared to the general public and, thus, caused plaintiff to develop the occupational disease or, at minimum, aggravated a pre-existing shoulder condition.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The Full Commission concludes that Plaintiff's employment with Defendant-employer exposed her to a greater risk of developing the occupational disease of bilateral shoulder bursitis or shoulder impingement due to intermittent pressure in the employment as compared to the general public and, thus, caused plaintiff to develop the occupational disease or, at minimum, aggravated a pre-existing shoulder condition. N.C. Gen. Stat. § 97-53(17); Rutledge v. Tultex Corp.,308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983).
2. Plaintiff is entitled to receive temporary total disability compensation at the weekly rate of $402.40 from May 16, 2005, when she could no longer perform her duties for *Page 10 
Defendant-employer, through November 20, 2006, when she returned to suitable employment with another employer earning wages equal to or greater to her wages with Defendant-employer.
3. Plaintiff is entitled to have Defendants pay for medical treatment incurred or to be incurred that is reasonably required to effect a cure, give relief, or lessen the period of Plaintiff's disability, including the chiropractic care for Plaintiff's reasonably related cervical and thoracic pain by Dr. Burch. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
4. Defendants are entitled to a credit for any short-term disability paid to Plaintiff during the period of indemnity compensation awarded herein. N.C. Gen. Stat. § 97-42.
5. Defendants are entitled to a credit for any unemployment benefits received by Plaintiff during the period of indemnity compensation awarded herein. N.C. Gen. Stat. § 97-42.1.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to Plaintiff temporary total disability compensation at the weekly rate of $402.40 from May 16, 2005, through November 20, 2006, subject to the attorney's fee provided herein. Because this amount has accrued, it shall be paid to Plaintiff in a lump sum.
2. Defendants shall pay for medical treatment incurred or to be incurred by Plaintiff that is reasonably required to effect a cure, give relief, or lessen the period of Plaintiff's disability, including the chiropractic care for Plaintiff's reasonably related cervical and thoracic pain by Dr. Burch.
3. Defendants shall receive a credit for any short-term disability paid to Plaintiff during the period of indemnity compensation awarded herein. *Page 11 
4. Defendants shall receive a credit for any unemployment benefits received by Plaintiff during the period of indemnity compensation awarded herein.
5. Defendants shall pay the costs.
This 6th day of August 2008.
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/___________________ DANNY LEE McDONALD COMMISSIONER
DISSENTING:
 S/___________________ BUCK LATTIMORE COMMISSIONER *Page 12